IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RACHEL S., <br> as Next Friend of J.D.S., a Minor,[1] <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER of SOCIAL SECURITY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil No. 20-cv-176-MAB <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM and ORDER**

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, on behalf of her minor son J.D.S., seeks judicial review of the final agency decision denying J.D.S.' application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.[2]

## **Procedural History**

Plaintiff applied for SSI on behalf of J.D.S. in March 2017, alleging a disability onset date of March 23, 2017. After holding an evidentiary hearing, an ALJ denied the application in January 2019. (Tr. 13-26). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*See*, Doc. 17).

1

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. The ALJ failed to properly evaluate whether J.D.S. met the criteria of Listing 112.11.

2. The ALJ failed to properly evaluate whether J.D.S. functionally equals any of the Listings.

**Applicable Legal Standards**

**1.      Childhood Disability**

A child under the age of 18 is considered disabled if he or she has a medically determinable physical or mental impairment "which results in marked and severe functional limitations" and which has lasted or is expected to last for more than 12 months. 42 U.S.C. §1382c(a)(3)(C)(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D).

The ALJ follows a three-step sequential analysis which is set forth in 20 C.F.R. §416.924:

1. Is the child claimant engaged in substantial gainful activity? If so, he is not disabled.

2. Does the child have an impairment or combination of impairments that is "severe?" If not, he is not disabled.

3. Does the impairment or combination of impairments meet, medically equal, or functionally equal the severity of a listed impairment? If not, he is not disabled.

At step two, an impairment is not "severe" if it is a slight abnormality or a

combination of slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. §416.924(c).

The listed impairments for children are located at 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B. At step three, in order to determine whether the child's impairments functionally equal a listing, the agency considers how the child functions in six domains:

(1) acquiring and using information;

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for himself; and

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The child is at listing-level severity where he has marked limitation in two domains of functioning, or extreme limitation in one domain. 20 C.F.R. §416.926a(d). A marked limitation is one which "seriously" interferes with the child's functioning, while an extreme limitation "very seriously" interferes with the child's functioning. 20 C.F.R. §416.926a(e)(2) & (3). In assessing the severity of a child's impairments, the ALJ considers, among other factors, his functioning in school and the effects of medication and treatment. 20 C.F.R. §§ 416.924a(b)(9), 416.926a(e)(2).

## 2. Judicial Review

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

3

evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not J.D.S. was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

The ALJ followed the three-step analytical framework described above. He determined that J.D.S. had not worked at the level of substantial gainful activity since the application date. He was born in 2011 and was a preschooler when the application was filed. He was a school-age child at the time of the ALJ's decision.[3] The ALJ found that Plaintiff had one severe impairment, attention deficit hyperactive disorder (ADHD). This impairment did not meet or medically equal a listed impairment. He further determined that this impairment did not functionally equal a listing.

---

[3] A school-age child is between 6 and 12 years old. 20 C.F.R. § 416.926a(g)(2)(iv).

With regard to the six domains of functioning, he found that J.D.S. had less than marked limitations in two areas, that is, in acquiring and using information and in attending and completing tasks. He found that J.D.S. had no limitation in the other four areas. Therefore, the ALJ concluded that he was not disabled. (Tr. 13-26).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**1.     Evidentiary Hearing**

J.D.S. appeared at the hearing in December 2018 with his mother (Plaintiff) and an attorney. (Tr. 33).

J.D.S. was seven years old and was in the second grade. (Tr. 35).

Plaintiff testified that J.D.S. had an I.E.P. (Individual Education Plan). He was taken out of class for certain subjects for one-on-one help. He always put his hands on other children. He usually got Cs and Ds. He did not do his homework unless someone was right there with him. He "just runs, runs, runs, runs." He never sat down and just kept going and going. He acted like he could not bathe himself and his mother had to help him get dressed because he became frustrated. (Tr. 41-42).

J.D.S. took a generic form of Concerta in the morning. His teachers had not told his mother that the medicine did not work, but by the time he got home from school, it was like the medicine had worn off. (Tr. 43-44).

**2.     School Records**

J.D.S. was in regular education classes in kindergarten, although he was "well-below" grade level in reading and math. (Tr. 294-295).

In July 2011, a first-grade teacher completed an ADHD Diagnostic Teacher Rating Scale. The most severe rating on the scale is "very often." The form instructs the teacher to consider the rating in the context of what is age appropriate for the child. The teacher rated J.D.S. as "very often" in a number of areas, including fails to give attention to details or makes careless mistakes in schoolwork; has difficulty sustaining attention to tasks or activities; does not follow through on instruction and fails to finish schoolwork; has difficulty organizing tasks and activities; loses things necessary for tasks or activities; is easily distracted by extraneous stimuli; is forgetful in daily activities; fidgets with hands or feet or squirms in seat; and interrupts or intrudes on others. She rated him as "often" in leaves seat when remaining in seat is expected; is on the go or acts as though driven by a motor; initiates physical fights; is physically cruel to others. (Tr. 220-221).

In September 2017, the first-grade teacher wrote a letter to J.D.S.' doctor stating that the child loved to be with his peers, but he was "often overly excited and someone gets hurt." The child had "frequent" problems on the playground, including "hands-on, cutting in line, pushing & name-calling." Unstructured situations were more of a challenge than classroom situations. He was not a malicious child, but he "can be very impulsive at times & forgets how to treat his friends." (Tr. 218).

At a Section 504 Conference in February 2018, it was noted that J.D.S. was making slow academic progress.[4] He had "well below average" reading and math composite

---

[4] Section 504 is a reference to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

scores. His teacher's biggest concern was "lack of attention & focus as he is often off-task, impulsive, makes careless mistakes, & needs frequent repetition of directions." (Tr. 238-239). That same month, a teacher noted that he was "very much" (the most severe category offered on the form) affected by behaviors such as constantly fidgeting; restless or overactive; excitable/impulsive; inattentive/easily distracted; short attention span; and disturbs other children. She noted this was a small group instruction situation with only three children. (Tr. 240).

Teachers sent home weekly behavioral reports to parents. Their reports stated that J.D.S. was "hands-on" to others; off-task; hurt other kids at recess; jumped on others' back;, pushed, spit, and cut in line at recess; called people names; laughed at others when they made mistakes; and was off-task during a reading test. (Tr. 245-255).

J.D.S.' report card for first grade (2017-2018 school year) is located at Tr. 311-312. The school used a three-level grading system. 1 was "needs to improve to meet the standard." 2 was "progressing toward the standard." 3 was "consistently meets the standard." For all four quarters, J.D.S. was graded at 3 in science, social studies, physical education, music, and art. However, he received mostly 1s and 2s in the foundational skills of language arts, as well as the areas of informational text/literature, speaking and listening, and grammar and writing. He received 1s, 2s, and 3s in the areas under mathematics. In the area of work habits and social skills, he was graded at 1 every quarter in "works and plays cooperatively" and "organizes materials." He was graded at 1 in the last three quarters in stays on task during instruction, and controls body and voice. He was graded at 2 every quarter in listens and follows directions. (Tr. 311-312).

7

In October 2018, when J.D.S. was in the second grade, an IEP conference was held. (Tr. 377-378). It was determined that J.D.S. was eligible for special education services based on a learning disability and health impairment (ADHD). His performance was "significantly discrepant" in basic reading and reading fluency. Under social/emotional status, the report stated that J.D.S. had difficulty with focus and completing assignments. He needed constant redirection, even in a small group. He was attention-seeking. In social situations, when not under direct adult supervision, he "often shows a lack of self-regulation and self-control." He did not begin or complete assignments without one-to-one support. He was approved for 450 minutes per week of special education services in Language Arts outside the regular classroom. (Tr. 422-430).

    **3.**    **Medical Records**

J.D.S. was born in July 2011. In March 2017, Dr. Bay noted he was having "significant school difficulties with staying in his seat and doing his work. The doctor had received a "Conner assessment" from school. He diagnosed J.D.S. with ADHD and prescribed Adderall. (Tr. 284-286).

Because J.D.S. was continuing to have issues with behavior in school, Dr. Bay changed his medication to Concerta in December 2017. He was to be seen by a psychiatrist. (Tr. 366-368).

Dr. Loynd, a psychiatrist, saw J.D.S. in February 2018. She noted that J.D.S. had a "504 plan" but interventions had not improved his reading and math levels. During the exam, J.D.S. was hyperactive and impulsive, and crawled under the doctor's table. His mother reported that he had made threats to peers to stab them with scissors; would kick,

8

bite, and pinch people; and wrote on a teacher's shirt while the teacher was helping someone else. The doctor increased the dosage of Concerta. (Tr. 361-365).

   4.   **State Agency Consultants' Opinions**

In May 2917, acting as a state agency consultant, M. W. DiFonso, Psy.D., assessed the severity of J.D.S.' impairment based on a review of the record. She considered whether his impairment met or functionally equaled Listing 112.11. She determined that J.D.S. had less than marked limitations in acquiring and using information, attending and completing tasks, and health and physical well-being. He had no limitations in the other three domains. (Tr. 54-56). A second psychologist agreed in July 2017. (Tr. 63-65).

## Analysis

Plaintiff first argues the ALJ failed to properly evaluate whether J.D.S. met the criteria of Listing 112.11. She points out that the ALJ mentioned only one listing by number, 112.14, but that listing does not apply to J.D.S.

Listing 112.14 applies to Developmental Disorders in infants and toddlers, while Listing 112.11 applies to Neurodevelopment Disorders in children aged 3 to 18. J.D.S. was over the age of three when the ALJ issued is opinion, so Listing 112.14 does not apply to his case.

The Commissioner argues that the reference to Listing 112.14 was a clerical error since it is evident that the ALJ was aware of J.D.S.' age, and, in any event, it is clear that the ALJ considered all applicable listings. Further, he argues, the ALJ relied on the state agency consultants' opinions, and they referenced Listing 112.11.

The Commissioner's arguments are correct, but they only go so far. As Plaintiff

9

argues, there is a more fundamental and pervasive problem with the ALJ's analysis of whether Plaintiff met or functionally equaled the severity of a listing: the ALJ failed to consider all relevant evidence and relied on outdated state agency consultants' opinions.

The ALJ completely ignored the October 2018 IEP conference report. He noted several times that J.D.S. "was only receiving education in a regular classroom with no special instruction." (Tr. 18, 20, 21). He cited to a form completed by the child's kindergarten teacher for this information, ignoring the fact that J.D.S. was placed in special education instruction outside the regular classroom for 450 hours per week in October of the second grade. Remarkably, the Commissioner commits the same error in his brief. *See* Doc. 29, p. 15.

The ALJ ignored other information as well. He ignored the numerous behavioral reports by teachers detailing J.D.S.'s inappropriate interactions with other children: he was "hands-on" to others, hurt other kids at recess, jumped on others' backs, pushed, spit, and cut in line at recess, called people names, and laughed at others when they made mistakes. (Tr. 245-255). He failed to note that J.D.S. was graded at the lowest level in all four quarters of first grade in "works and plays cooperatively." Further, the October 2018 conference report states that his teachers found that he needed constant redirection, even in a small group; was attention-seeking; and, in social situations, when not under direct adult supervision, he "often shows a lack of self-regulation and self-control." (Tr. 422-430).

While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. "The ALJ simply

10

cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). That is what the ALJ did here.

The ALJ's decision is not saved by his reliance on the state agency consultants' opinions because they reviewed the record long before the October 2018 conference. The consultants repeatedly cited to the 5665 teacher questionnaire, which was the brief form completed by the kindergarten teacher. (Tr. 55, 64-65). In addition, they did not see Dr. Bay's office note from December 2017 or the psychiatrist's office note from February 2018. This later evidence reflected significant developments, making the consultants' opinions outdated. Reliance on the opinions was error. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted). The Court must conclude that the ALJ failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

This Memorandum and Order should not be construed as an indication that the Court believes that J.D.S. was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## **Conclusion**

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

I**T IS SO ORDERED.**

**DATE:   October 14, 2020.**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
